Ms. Yev. Mr. Chief Justice, and may it please the Court, Rule 54d provides a standard for an award of cost to a revealing party that, by the rule's expressed terms, does not apply where a Federal statute provides otherwise. The Fair Debt Collection Practices Act provides otherwise because it states a different rule for awarding costs than does Rule 54d. Whereas Rule 54d gives district courts wide discretion to award costs to prevailing defendants, the FDCPA limits courts' discretion to cases brought in bad faith and for the purpose of harassment. The text of the Act provides that on a finding that an action was brought in bad faith and for the purpose of harassment, the court may award attorneys fees reasonable relation to the work expended and costs. As a matter of grammar, the unmistakable meaning of that sentence is that an award of cost, like an award of attorneys fees, is subject to the condition that the plaintiff's suit be brought in bad faith. Scalia, under that provision. That's certainly true. You can't get costs under that provision unless there has been that prerequisite. But it's ancient law that repeals by implication are not favored, and what you're arguing here is that that provision effectively repeals another provision which allows costs in all cases, whether or not there has been misbehavior. Now, why is this an exception to our general rule? I just don't seem to me like a clear repealer. Well, there's no need to consider repeal by implication in this case, Your Honor, because Rule 54d expressly states that its presumption does not apply. Ginsburg. Yes, Ms. Lee, but you are assuming a conflict. You're saying either the statute applies or Rule 54d applies, but the statute can be read to say we are describing one category of case. We are describing the worst case, the bad faith harassing plaintiff, and the statute deals with that category of person and no other. So if you're not a bad faith harassing plaintiff, but you nonetheless lost, then you're under 54d. Your Honor, if you look at Section KA3 as a whole, the two sentences together confirm that this is not a provision about bad faith plaintiffs, that, rather, the provision is addressing both fees and costs to plaintiffs and defendants. And if the Congress merely wanted to state in that second sentence that fees were available and didn't mean to say anything about costs to defendants, there would have been no reason for Congress to have put costs in that sentence. If they're not. Ginsburg. Well, there are a number of reasons. One is symmetry, because they have costs in the part about defendants. And the concern that, well, if we leave out costs for the bad faith harassing plaintiff, then it may be assumed that they get only attorneys' fees and not costs. So the statutes and provisions like this may be redundant, but one can see that a drafter might very well want to say, well, we said we're dealing with a defendant's costs. Do you want to put the same thing in with a plaintiff? Well, you made a few points, and I'll try to address each of them. First, there would be no reason to include costs in the second sentence just because it was in the first sentence. Because the first and second sentences are not parallel. The first sentence makes an award of costs mandatory, and therefore it does do some work beyond 54d. It clearly has a function in that sentence. Whereas the second sentence, the award is subject to the may. That is, that it's not mandatory that the court award them. If Congress was ‑‑ Congress would have no need to be concerned that if it left costs out of the second sentence, there would be some negative implication, because there are several statutes that mention fees without costs, and GRC has cited no instance in which a court has read a negative implication into that. We, in our reply brief, cited a couple cases that do the opposite. If Congress ‑‑ so, therefore, if Congress had omitted costs, left it out of the sentence, then Rule 54d would have continued to apply in cases where the defendants won. There are examples ‑‑ Sotomayor, don't district courts always have the authority to award costs for sanctional behavior like bad faith? So this provision is duplicate no matter how we read it. Sotomayor, it's either duplicate of a power the court already had to award costs for bad faith, or it's duplicate of Rule 54. Well, if you read this sentence as a misconduct provision, then it does repeat the court's inherent authority, although, as this Court has mentioned in a couple cases, sometimes statutes want to reiterate authority that exists elsewhere. If you read it our way, however, the statute ‑‑ the provision does actually do some work that it wouldn't otherwise do. That is, it limits cost awards to prevailing defendants in these circumstances. Sotomayor, I think your answer is always that Rule 54 obligates court to give costs. And this rule, as you read it, is a permissive grant only. Even in bad faith litigations, a court could choose not to give costs. Well, Rule 54 doesn't obligate a court to give costs. It establishes a presumption, and this says the presumption is limited to cases brought in bad faith and for purposes of harassment. There are other statutes that do ‑‑ similarly do what we've ‑‑ what's done here. Congress could have omitted, if GRC is correct, Congress could have just omitted the words, and costs, leaving the costs to be determined under Rule 54. An example of that is 15 U.S.C. 15Cb2, which is actions by State Attorneys General and provides that the court may award attorney's fees to a prevailing defendant upon a finding that the action was in bad faith. Ms. Eby, if we're going to look at other statutes, it seems to me we would want to look at statutes involving lenders. So we would look at the Truth in Lending Act and the, what is it, the Credit Reporting Organizations Act, and those do not provide for attorney's fees. They are covered only under 54D, which is costs, not fees. Why should we read this Act in a way that ‑‑ so that a defendant under this Act who can get attorney's fees is worse off with respect to costs than defendants under the other lending legislation? The ones that have only 54D. Congress gave defendants something more here. Why would ‑‑ why should it be that 54D would apply to the lender under the Truth in Lending Act, but not to the lender under this Act? Well, first, Your Honor, the Congress's purpose was not simply to ‑‑ this isn't just a defendant‑friendly provision. Congress had dual purposes in enacting K3. On the one hand, Congress wanted to deter nuisance suits, but on the other hand, Congress wanted to ensure that meritorious suits by impecunious debtors were not deterred by the prospect that an award of costs would exceed the value of the damage that could be recovered in a successful suit. And the two provisions of KA3 show the line Congress drew and how it balanced those two objectives. As to the other statutes, the Truth in Lending Act, the Credit Repair Organizations Act, they were enacted at different times by different Congresses. They have different sorts of provisions, some better for plaintiffs, some better for defendants. And ‑‑ but this category, in enacting this statute, Congress emphasized that the widespread and national serious problem of collection abuse that Congress said inflicts substantial suffering and anguish, and noted specifically in the Senate report this Court has cited to in the German case, that consumers, the impecunious ‑‑ the people who can't even afford to pay their debts are the primary enforcers of the statute. The FTC got about 120,000 complaints from consumers about debt collectors last year, more than any other industry. So Congress may reasonably have decided that the primary enforcers of the statute weren't going to be doing that work if they were ‑‑ if they were at risk of significant costs awards in cases that have frequently small value. There are other ways if Congress wanted to preserve Rule 54D that it could have done it that did not happen here. For instance, in 49 U.S.C. 14707C, Congress has a similar provision about attorneys' fees to prevailing ‑‑ attorneys' fees to prevailing party, and then states expressly that fee is in addition to costs allowable under the Federal Rules of Civil Procedure. Congress didn't do that here. Or Congress could have made it clear that it was not displacing Rule 54D as to cost awards by stating that the court could award attorneys' fees as part of the costs, therefore distinguishing fees and costs. Congress has done that sort of thing frequently, including in a statute that provides for an award in cases of bad faith. I'm looking at 28 U.S.C. 1875 that provides the courts may award fees as part of costs if an action was frivolous or in bad faith. So ‑‑ but Congress did none of those things here. Instead, what it did was draft a sentence that links the term cost to the attorneys' fees with the conjunction and, and subjects both of those objects of the sentence to the same condition, the condition that the plaintiff's suit was brought in bad faith and for purpose of harassment. GRC suggests that the reading ‑‑ that the statute, as the Justice mentioned, benefits plaintiffs. But what Congress wanted to do here ‑‑ I mean, what benefit plaintiffs, what Congress wanted to do was to help defendants. There's actually no legislative history about why this provision was put in there. What we have instead, for what it's worth, is a markup later where this provision is discussed in response to concerns that frivolous suits should be deterred. And this provision, which is now already in the statute, is discussed as one means of deterring frivolous suits. But the bad faith and harassment standard is the dividing line that Congress drew between nuisance suits and other suits. This case is clearly on the non‑nuisance side of the line, and cases on that side of the line are not subject to an award of costs. If the Court has no further questions. Sotomayor, I would assume that Rule 54, instead of saying what it currently does, said something like, except as expressly repealed in another statute. Would what happened here meet that express requirement of repeal? It was Justice Scalia's question to you, but reformulated in a different way. If Rule 54d incorporated a requirement that a statute expressly refer to Rule 54d. That would be a very different case, but, of course, Rule 54d doesn't do that. Instead, when Rule 54d was adopted, the Rules Committee actually, the advisory committee notes, lists 25 statutes that it says will not be affected by the rule. Those are statutes that allow fees, forbid fees, condition fees, allow fees in a broader scope of cases than Rule 54d does. And, of course, none of those would have mentioned Rule 54d because they preceded adoption of the rule.  Roberts. Thank you, counsel. Mr. Feigin. Feigin. Thank you, Mr. Chief Justice, and may it please the Court. Rule 54d expressly codifies in absolute form the well-established principle that a specific provision displaces a more general one. And I think that principle is very helpful here in answering a couple of the questions that have come up. First of all, it makes clear that no express textual conflict is necessary. This Court's never required one in its specific governance of general cases. And that's made even clearer if you look at the pre-2007 version of the rule, which is meant to be substantively identical to the current version of the rule. This is at page 12 of the government's brief. And the original version of the rule said, ''Except when expressed provision, therefore, is made either in a statute of the United I think that makes quite clear that when, as the FDCPA does, there is a specific statutory provision that addresses an award of cost incident to the judgment, that specific statutory provision prevails over the default rule that Rule 54d contains. Another point about the specific governance of general principle is that it would apply here even if the Court believed that section 1692kA3 covered some types of circumstances that Rule 54d and other things don't. And that's made quite clear by this Court's recent Eight Justice unanimous opinion in Radlack's Gateway Hotel v. Amalgamated Bank, in which the Court said, and I quote, ''We know of no authority for the proposition that the canon'' they are talking about, the specific governance, the general canon, ''is confined to situations in which the entirety of the specific provision is a, quote, subset of the general one.'' Breyer, I mean, my problem in this, of course, is I don't think, I mean, I read the whole statute. And they have a good claim until, I think, you read the whole statute. And I don't know what to say other than an impression. But the impression is that subsection 3, which is what's at issue, the whole thing is meant to say that the winner, when it's the plaintiff, is going to get attorney's fees. You know, it mentions cost, but that's the background rule. And then when you get to the second sentence of that, it means, and if you're in bad faith of the plaintiff, then the defendant gets attorney's fees. It doesn't really mention cost. That's the background rule. So and I look at the legislative history. There's some staffer, at least as I find that interesting, the they're talking about what the point of this is and say the whole point of this section is to help prevent frivolous suits. Well, so there we are. That's where I am at this moment. Well, Justice Breyer, I think it does expressly mention costs, both in the first and the second sentence. I didn't say on some technical linguistic basis it may do that. That's correct. But perhaps I'm unique in this, but I don't just look at the language. I look at the context. I look at the purpose. And I don't see anything in the language that gets rid of the background rule, and I don't see anything in the purpose that gets rid of the background rule, and I don't see anything in the history that gets rid of the background rule. I don't see anything in the consequences that suggests you should get rid of the background rule. I don't see anything in our traditions that says you should get rid of the background rule. So what do you do with some obstreperous judge who doesn't just look at the language? I mean, it uses it, but that's not the only thing. Well, Your Honor, if Congress were satisfied with the background rule, then I think it's strange that they added the words and costs to a sentence that expressly The person who's a drafter says, you know, you get your costs and you also get the attorney's fees. They don't know every statute, the people who draft this. They just say, Senator, what are we trying to do? They say, we're trying to give them attorney's fees. They say, okay, we'll give them the costs and the attorney's fees. Your Honor, I think that gets back to Justice Ginsburg's question of why weren't they just saying and costs here, just to make clear that not only fees would be available, but also costs. And I think that's an implausible hypothesis of what Congress was trying to do for the following reason. A Congressperson who is concerned that a reference to fees alone in the second sentence of section 1692kA3 would preclude application of the default rule in Rule 54d couldn't possibly have thought that the way to make clear that Rule 54d applies in full was to add the words and costs in a sentence that expressly And that's if you've been drafting it, perhaps, but the people who actually draft these things are a whole section over in Congress. They don't know every statute. And you give them a general instruction. And the general instruction would be add attorney's fees on the plaintiffs and add attorney's fees on the plaintiffs. You understand the point. Scalia. We have to assume ignorance of the drafter. Breyer. Yeah, ignorance of other laws. Our general principle. That's right. General ignorance. Your Honor, let me address that directly. If we presume that Congress was aware of Rule 54d, then I think it's quite peculiar and in fact quite counterproductive to have added the words and costs to a sentence that's expressly conditioned on a finding of bad faith and purpose of harassment. But if I accept your hypothesis that Congress was not aware of Rule 54d, again, it's quite strange that when thinking about the cost-shifting rule that should apply in FDCPA cases, what Congress decided to do was put the words and costs into a sentence that's expressly conditioned. Breyer. Well, then they shouldn't have put those words in, but we're talking about the next sentence. And the next sentence doesn't put the words in. So you're assuming from that fact that in a pro-defendant, this is a pro-defendant provision they put in, that was their whole point, apparently, reading it, that what they decided to do is take away from defendants costs which they'd normally get, without saying anything about it. I mean, that's you understand the problem. Your Honor, the words and costs appear in both sentences. I agree with Ms. Ziv that the legislative history does not indicate that this is a uniquely pro-defendant division, provision, and that's what the Court found in German. Breyer, where does it say that? What's the plus part? I'd like to read that. Your Honor, first of all, you can look at the legislative history directly addressing the sentence we're trying to interpret today. But I think if you look at the Court's opinion in German and the hearing that's cited at page 31 of the red brief, it reflects that Congress was trying to balance deterrence of nuisance suits and incentivizing good-faith consumer enforcement. If I could, I'd like to address the policy reasons why Congress would have found it particularly useful not to have plaintiffs pay costs in these circumstances. Well, that's a pretty odd way to balance. I mean, if you're trying to balance the interest, you say, well, here's an idea. Let's give them attorneys' fees, but let's not give them costs. That's a very curious way to dilute what was otherwise a defendant-friendly provision. Well, Your Honor, I don't think the provision is uniquely defendant-friendly. I think it draws a dividing line between nuisance suits and non-nuisance suits premised on the finding of the suit being brought in bad faith and the purpose of harassment. And the reason why Congress thought it was necessary to shield good-faith plaintiffs from costs here in order to incentivize enforcement is, first of all, these are particularly low-value suits, especially when compared to other statutes in the CCPA. They're the kind of suits that can be incentivized by a mere $1,000 in statutory damages. And as this case demonstrates, the costs of a suit, if taxed against the plaintiff, can be much more than $1,000. Breyer. Did you try to do any sampling on that? Because I did, actually. And I discovered something that I think is not as strong for you, but it isn't too much against you. We just did a random sample of 28 successful cases, and I think the average recovery, except for one outlier where it was very high, it was around $4,000, and the three to four. And the average costs on the ones that the defendants won, I guess, was around 1,000. So you have a point. But it isn't quite as good a point as you seem to suggest. That is, it's not so low value and the costs are not so high. You know what to make of it. Plaintiffs here are uniquely likely to be deterred because they are the kind of people who have been pursued by debt collectors. They are going to be in debt themselves. They are not going to be able to pay costs. That's why attorneys, and that's why the statute provides for attorneys generally to take these cases on contingency, on the hope that they will recover fees when the plaintiff is successful. Now, a plaintiff looking to bring this kind of case, the only out-of-pocket expense the plaintiff is facing is the potential that if it loses the case for some reason that it can't be aware of initially, such as a bona fide good-faith defense or the law being interpreted against them in an area where the law is unclear, that they are going to have to pay out-of-pocket against the plaintiff himself, not the plaintiff's attorney, who are the people that defendant claims are responsible for the abuses they allege in FDCPA cases. This is going to come out, be a judgment directly against the plaintiff. It's difficult to believe that Congress enacted a provision specifically because it believed that the debt collection industry was forcing, among other things, personal bankruptcies, and wanted the kind of plaintiffs who are going to be in a position to enforce the FDCPA to have to face the risk of incurring thousands of dollars in costs if they lose a suit that they bring in good faith. And the reason to understand your simple position to be that what Rule 54d says is if another provision deals with cost, you are relegated to that other provision. Waxman, and this you are inverting the express, unless that provision refers you back to 54. Well, no, Your Honor, I would qualify that a little bit. I think we just think it codifies an absolute form of the specific governance of general principles. So the first question you ask is whether they are covering the same territory, and they are here. Both 1692kA3 and 54d cover awards of costs incident to the judgment. The second question you ask is the scope of the displacement. So it's possible that you might have a provision, as the first sentence of 1692kA3 does, that only governs in certain circumstances and mandates an award of costs in those circumstances. We don't think a sentence like that, standing alone, would displace a court's discretionary authority under Rule 54d to award costs in other circumstances. We don't think there's any need to adopt some new special rule for Rule 54d that's different from how this Court normally applies the specific governance of general principle. Thank you. Roberts, Thank you, counsel. Ms. Blatt. Blatt. Blatt. Thank you, Mr. Chief Justice, and may it please the Court. Our position is that the second sentence of section 1692kA3 is a pro-defendant provision that does not strip courts of their discretion under Rule 54 to award costs to prevailing defendants. We think that, first, because of the text and structure, and, second, because of the statutory history and purpose. As to the text, the second sentence states that a court may award, it's an affirmative grant of power, rather, that a court may award attorneys' fees and costs if a plaintiff files a lawsuit in bad faith. The text doesn't say that a court may not award costs in the absence of bad faith. The text doesn't say or even address a court's discretion to award costs to prevailing defendants as an ordinary incident of defeat. Ms. Blatt, it seems to me that the most natural way to read this statute, and it's not your way, it's, look, we have this Federal Rule of Civil Procedure that contemplates that Congress sometimes doesn't write statutes authorizing lawsuits without providing a cost provision. And because we know that about Congress, we provide a default rule, and the default rule is what's laid out in subsection D as to costs and then also later as to attorneys' fees. But we know that Congress sometimes does address costs and fees, and where Congress in a particular statute has addressed costs and fees, we look to whatever Congress has said, you know, unless Congress has otherwise provided. And here, this is 1692K, is a provision that addresses costs and fees. It addresses them comprehensively and specifically. Blatt, I disagree with everything you said for the following reasons. Sotomayor, I expected you might. Blatt, this is not a field preemption case. Rule 54 doesn't say don't award costs if a statute can be plausibly read to address it. It says unless it provides otherwise, which means Congress actually intended to displace. And unless you actually think that this provision intends to take away a cost authority, you don't get there. Kagan Maybe I'm not in the business of trying to figure out what Congress's intent is. All I'm trying to figure out is whether this Federal statute provides otherwise, and this Federal statute does provide otherwise. Blatt, here's why it doesn't. It doesn't displace it. It doesn't in terms of the plain text, it just doesn't. It doesn't say anything, there's no disabling aspect about it. It's an affirmative grant to protect the defendant. And when you say to a court it has sanctioning power to award attorney's fees and costs, that doesn't say anything about what happens in the ordinary case where the defendant has prevailed at trial, been found to be completely innocent. Scalia In that respect, it is different from Radlax, in which the two provisions where we held the specific covers in the general, but we held that because the two provisions contradicted each other. Kagan Not only do they not contradict, this is not a specific – when you said, the other thing I disagreed with when you said this comprehensively addresses costs, no, this comprehensively is about attorney's fees. Blatt It's both. You know, it is – and if I might say, I mean, you object to this statute. It's perfectly reasonable to say Congress should have written a separate provision about costs and attorney's fees, but for whatever bad, good or indifferent reason, Congress didn't. And so this statute basically says, here's what prevailing plaintiffs get as to both costs and fees, here's what prevailing defendants get and under what circumstances as to both costs and fees, and those are the rules. Sotomayor Yes, unlike the whole statute that talks about prevailing plaintiffs, it doesn't. What is fascinating about this case is in all 50 titles of the U.S. Code, there are specific provisions that say plaintiffs shall not be liable for costs, or a plaintiff shall not be liable for costs unless a certain condition occurs. There's only one statute, we looked at all 50 titles, there's one statute that says a court may award costs if a certain condition occurs. That's the pipeline. Roberts By all 50 titles, you don't mean each title, do you? Sotomayor We've looked for all – we've looked at all the cost provisions.  I mean, like in Title IX, one of these, Title XI. Sotomayor It's funny about this. Nothing in this case, I don't mean to trivialize it, but there's only one other statute, that Electronic Fund Transfers Act, that talks about a court shall award attorneys' fees and costs if there's bad faith. And there's one other statute that says for a prevailing defendant, the court may award costs if the lawsuit is frivolous. And in those three significant ways, I think it shows why we win, and that's the statute they relied on to say it's just like our statute on page 18 of their brief, page 29 of our brief. First, it only refers to cost. The statute's about cost. Our statute's about attorneys' fees being the main event upon abetting and by faith. Second, it mentions prevailing defendants. Ours doesn't. And third, which I think is missing from the entire 30 minutes that you heard, their argument is as plain as Congress sat down and wanted to incentivize frivolous suits and non-frivolous suits alike, at least in the Pipeline Safety Act. Congress said if it's frivolous, the defendant gets its cost. But here – Kagan is very – is very normal if it were just about fees, right? It would be just like the civil rights fees statutes where it said prevailing plaintiffs get fees, but prevailing defendants only get fees upon some higher standard, here bad faith. What makes this statute different, and it is different, is that this statute twice says not only fees, but also cost. Now, you might say that's very uncommon, but in both sentences it says we want the same rule for costs as we do for fees. Well, I mean, a couple things about that. It's both very common. Fee-shifting provisions routinely refer to both fees and costs, just like salt and pepper, peanut butter and jelly. They go together as a set. And so the problem with that is that there are some statutes that don't. Yes. Yes. So it's not always peanut butter and jelly. Okay. It's peanut butter and honey sometimes. Yes. And here. Love and marriage. I don't know about that one. But here, here, I think Congress – first of all, it's just wrong that the reference to and cost is grammatically inexplicable and devoid of practical function. And that is the fundamental point of the blue brief, is this is just grammatically inexplicable. And that's just not true. What and cost does is it basically the word and is being used to mean in addition to, and means in addition to. And so what Congress is saying is when courts fee shift, attorney fee shift upon a finding of bad faith, courts additionally may award cost in addition to and over and above the attorney's fees that were measured in relationship to the work performed. Well, I suppose you're right. What about their policy argument here, that you're a potential plaintiff, you've borrowed a lot of money, you don't have a lot of money, and the deal is this, under your interpretation, if you win, you're going to get $2,000 or $3,000. If you lose, it will cost you about $1,000. That's under your interpretation. Right. And under theirs, it's if you win, you get $2,000 or $3,000, and if you lose, at least you don't lose anything. Yeah. I think their policy argument is, I mean, it could not be worse. A homeless person. Oh, it could be worse. No, it couldn't be worse, and here's why. A homeless person filing a civil rights case has to pay costs, and at least that person has to pay, has to prove damages. Their plaintiff gets $1,000 for free. Second of all, the plaintiff in this case never asked for relief. Rule 54 is discretionary. If this woman was in pain and suffering, why didn't she say, district court, I can't afford this? It is the law in every circuit that the district court doesn't have to award costs, it's just discretionary. So Rule 54 has a built-in safety valve. It accommodates all the policy concerns on the other side. And every other informer paupers litigant, every other consumer protection plaintiff, every civil rights plaintiff, every plaintiff in the country faces the risk of a cost award, but doesn't get $1,000 thrown in. Ginsburg. Ms. Blatt, we do have in this case the views of the government regulators, the FTC and the Consumer Finance Protection Bureau, and we have heard the government's position on the relationship between these two provisions. Should we give any weight to the interpretation of the government administrators? Obviously not. I don't even know where they would get a basis for deference. I'm sorry. Scalia. We have a lot of cases that say that the agency's views about what courts should do are not entitled to deference. This is a matter within the court system. Yeah, but that would have led better, and I don't want to cite that to Justice Ginsburg. So I think the better answer is, what's so mystifying about their policy argument is that they enforce 20 consumer protection statutes, and all of them, their plaintiffs have to pay cost. Now, what about the — how does this work, the canon? I'm very interested. Sorry. I'm sorry. I'm very interested in canons, and I want to know, on the canon, the traditional thing, which you probably looked up, what about the specific governs the general? Is it — how is that — that's an old canon that's been around a long time, and people are aware of it, and that's what they're addressing. Well, I'm happy to go canon to canon. This is the — seems to be the one they feel is very important. That's the government. Yeah. Well, that's what I'm interested in. I'm interested in that. I don't think canons, you know, don't trump common sense, context, history. Well, that's a different matter. But let's go to canons. Let's go to canons, specific versus the general. It's all word games. It just turns on what you think specific means. This is not specific to the question presented about prevailing parties and cost. This is about attorneys' fees, that Ed costs are on top of attorneys' fees as a sanction. Well, you say that, but it says to both. It says the costs together with the reasonable attorneys' fees. And then the next sentence, it says fees and costs. So you might wish that there were a different statute, and it might be good policy to have a different statute. I don't wish for a different statute. I think what you're saying is that Congress passed a firewall. Congress said we need to encourage frivolous suits and non-frivolous, but let's put a firewall in. And give them fees and costs. If God forbid there's bad faith and harassment. Kagan I'm not in the business of trying to figure out exactly what Congress is doing. I'm in the business of just reading what Congress did. And what Congress did is it created a set of rules that applied to attorneys' fees and costs at the same time. It affirmatively gives district courts emboldening power to sanction. So what we're saying is that if you have a lawsuit and bad faith and for purposes of harassment. So, I mean, I think even, I think the history is obvious. This was trying to make defendants better off than the defendant sued under the Truth in Lending Act, which is part of the same umbrella Consumer Credit Protection Act. And theirs inexplicably somehow, by trying to make them better off, made them worse than every other creditor that they serve, and immunized these plaintiffs from the universal risk of cost shifting that every other litigant has to face. And so, and you don't get there from all they have is a negative inference. Kagan, but you say it's supposed to make defendants better off by focusing on just part of the provision, but the provision is as a whole, it does a set of things. It treats plaintiffs, prevailing plaintiffs, in a certain set of ways, and it treats prevailing defendants in a certain set of ways. Sotomayor, It doesn't speak to prevailing defendants. Kagan, prevailing defendants, but when prevailing defendants are treated worse than prevailing plaintiffs, because they have to show that there's a bad faith lawsuit. Sotomayor, I'm going to keep repeating it because it's my position. This doesn't, the fact that this doesn't refer to prevailing defendants speaks volume that what was not on Congress's mind was Rule 54. What was on Congress's mind is victimized debt collectors who were sued in bad faith. Now, I understand this is a pro-plaintiff statute, but this would be extraordinary to think that they gave them attorney's fees when they went, but it's basically saying this is a defendant who went to trial and won, was law-abiding, didn't do anything wrong, and Congress, in that situation, said not only might not the suit have merit or good faith, it might have even been frivolous. When under Rule 54, again, this is what I find so mystifying about this case, if the Petitioner thought, oh, I had a really hard case in the law, or, oh, I'm really poor, she could have asked for discretionary relief. Instead, the lawyer went into court and said, I have a recent Ninth Circuit decision  But I don't have to pay cost at all. Sotomayor, But let me try it a different way. Kagan, Okay. Let's just suppose that 54K didn't exist, okay? Kagan, 54D? Kagan, 54D didn't exist, and all you had was this provision, okay? So this provision says, on a finding by the court that it's brought in bad faith, the court may award to the defendant attorney's fees and costs. So suppose a defendant wins, but there's not a finding that it was made in bad faith. Would then the person be entitled to either attorney's fees or costs? Well, we wouldn't, certainly, we sought costs here under Rule 54. Kagan, I'm saying, I can speak it out. Kagan, Okay, and you've took it out. So that takes out my seeking for costs under Rule 54. It doesn't exist in your world. Kagan, In my world, you would not get fees or costs. Kagan, No, I'm imagining then the world in 1936, and we rely on 1920 or 1919 or the longstanding practice of courts awarding costs. Now, a court might Kagan, I'm just asking you a simple question. Kagan, We would not get costs under this provision. Kagan, You would not get costs under that provision. Kagan, Because this, in that sense, I think this was a question that another Justice asked. If you just look at this provision, the only basis for costs and fees in this provision is the bad faith finding of her last name. Kagan, Okay. So if you would not get costs under that provision? Kagan, Under 1692. Kagan, Under 1692, a provision that talks about fees and costs generally as to both plaintiffs and defendants, then how does a rule that says what, where you would get costs unless a Federal statute provides otherwise change matters? Kagan, Because, because, again, Rule 54 is not preemption, a field preemption. It's saying if Congress intended to displace the proviso, unless otherwise provided, it was recognition that other statutes might displace Rule 54. And if you look at all the statutes that we cite on pages 19 and 20, they actually do prohibit costs. And then if you look at the statutes on pages 24 and 25, where time and time again Congress has said a prevailing party may recover attorneys' fees and costs. Well, the and costs, in their view, I guess those statutes are inexplicable. I mean, it's clearly they're redundant, they overlap with Rule 54. They don't displace it. And even the practice guides that we cite on page 22, which is basically Wright and Miller and Moore, say something that merely overlaps with Rule 54 doesn't displace the Court's discretion. And again, I think you have to ask yourself, what was Congress doing? To me, this is a the attorneys' fees are the main show. It goes with bad faith. Congress was not thinking about Rule 54. And I think you can be quite confident Congress was not thinking, we want plaintiff lawyers to go around saying not only Congress, but the government wanted us to file frivolous suits. Kagan, You might be right, but suppose Congress wasn't thinking about Rule 54. Suppose it didn't occur to the drafters what Rule 54 said or what the default provision was. They just wrote a statute about fees and costs. And then it doesn't really matter whether they were thinking about Rule 54 or not. Yes, if you – right. And so there's like that Oncal case with same-sex harassment. Congress can write a very – can write a plain language provision, and regardless of what Congress intended, if the language covers it, that's tough, we're going to construe it. That's your law. This is not that.  This is talking about bad faith and attorneys' fees. It doesn't say a court can't act in the absence of bad faith. It doesn't say anything about prevailing parties. It doesn't reveal any intent to displace it, especially when you compare it with all the other statutes. You look at the history. Sotomayor, it was thinking about prevailing parties, because the predecessor sentence talked about prevailing parties. Kagan, I agree. Sorry. Sotomayor, but it was talking about prevailing parties. The provision is geared towards prevailing parties in some form. The first sentence says a prevailing plaintiff, not whether it's on a substantial basis or any exception. It says you get fees or you can get fees and costs. Right. So it then decides to limit what a prevailing defendant can do. Isn't that the natural reading? No, because it says expressly in a case of successful action it talks about prevailing plaintiffs. And then it says if there's a – to me it's just natural when you just read it in light of sort of common sense and context on what Congress was doing, if a plaintiff files in bad faith, the court is empowered and emboldened, it's like a neon light, courts, you have authority to award attorneys fees and costs. Well, but that's just a different way of saying the following. The first sentence says when you're a prevailing plaintiff, you get costs and fees. How about defendants? Well, prevailing is not enough for defendants. Defendants have to show that the suit was filed in bad faith. And then they get costs and fees. Right. And I think you have to keep this in mind, that there are completely diametrically opposed background presumptions in our legal system. It's an extraordinary event to get attorneys fees, and it's an extraordinary event not to get costs. And so the court – the Congress has to use explicit language to overturn the American rule. And so what Congress did here, I just think that is the most natural, and even if I drew you to a tie. I completely agree with that, that that's what it comes down to, that if you think that Congress has to use super-extraordinary language to over – to get out of 54D, then you're right. But 54D doesn't say that. It just says, unless a Federal statute provides otherwise. And I think you can look, and the Petitioner did a valiant job of trying to drudge up as many statutes as they can. All the statutes on point are explicit. Now, there's one statute that might not be, the pipeline safety one. And so the question is, do we think that Congress actually tried to displace a court's authority under that statute? And that's a statute that just says a court may award cost if a lawsuit is frivolous. This one just doesn't say that. You at least – even if you don't think of it as a magic language or an explicit statement, the fact that Congress repeatedly has used explicit language casts considerable doubt that this was done by mere implication. And then you look at the fact that it doesn't mention prevailing parties, it's talking about bad faith, it has attorneys fees, what was Congress doing? You look at the legislative history, it shows that it was trying to make them better off than a class of defendants, but their view inexplicably makes them worse off. And then you look at the result that they're actually advocating, that the government thinks it's a good idea that plaintiffs can file lawsuits cost free that are frivolous. I mean, that's the reason. Scalia, I guess in the first sentence of 3, the phrase the cost of the action is really superfluous in light of 54d-1. You really don't know that. I mean, that would have been the case anyway. So there's no reason to think that it isn't frivolous in the second sentence or superfluous in the second sentence, right? Why did they have to say the cost of the action in the case of a successful action? The cost of the action, together with a reasonable error, as determined by the court. They'd have the cost anyway if Congress didn't write anything. Right? I mean, I think that, again, I mean. I'm trying to help you. Yeah, I know, and I was going to say, there's so much superfluity in here, I don't know where to begin. It's all over the place. The whole thing, obviously, overlaps with the Court's inherent authority. But. Sotomayor's argument that the first sentence does away with the discretionary nature? No, it's clear shall. It's clear shall, obviously. The first sentence does work. So it's a command. 54d is permissive according to your earlier argument. Oh, yes, that's right. Yes. So this does, it's not superfluous because it makes a command that's well taken. Yeah, the question, though, was in the case of any successful action when, obviously, they prevail to begin with. So the question is whether that's superfluous. But the whole provision overlaps with the Court's inherent authority. And no, it hasn't come up, but I just think it's strange that it says, for the purposes of bad faith and harassment. Congress was obviously using belt suspenders there. So it's not surprising that Congress added and cost here. If you look at Rule 54, let me just say one other thing, Justice Kagan. If you look at Rule 54, it also says, unless the statute provides otherwise, cost other than attorney's fees. So why? I didn't have to say that, because in the next provision it talks about attorney's fees. They just, they wanted to make clear, for whatever reason, or maybe they just wrote some really excess, redundant, silly language. But they said cost, meaning anything that's not cost. It's just that Congress sometimes uses these, and I guess this was the honey and peanut butter thing, is that a lot of fee-shifting statutes talk about both attorney's fees and cost. And so they went together and they also mentioned it. Obviously, it's different. I agree that there's a verb in the first sentence that's mandatory, so it trumps Rule 54. But with respect to the two objects, Congress was already thinking about attorney's fees and cost anyway. And so there's nothing wrong with them saying, in addition to the attorney's fees that you can get in bad faith, once you calculate the attorney's fees, reasonable in relation to the work performed, you also get cost. And the only thing I would say is, when we define and as in addition to, they seem to think that was an extraordinary reading of the word and, citing something from something called Dictionary.com. And if you just went to Dictionary.com, which I had not done before, you type in and, the first definition is in addition to. There are no further questions. Thank you, counsel. Ms. Yebb, you have six minutes remaining. Thank you. First, the FDCPA doesn't just encourage frivolous suits. Ms. Blatt repeatedly referred to plaintiffs getting a free $1,000. If the plaintiffs win their suits, that means both that they're not frivolous and they're not in bad faith. In cases that are frivolous, but a court makes a finding that it's not in bad faith, defendants have other means of recovering fees and costs using Rule 11 or Section 1927. And there are cases in which courts have denied fees and costs under the FDCPA and granted them under Rule 11 or 1927. Ms. Blatt suggested that the statute governs all requests for fees and costs under this particular Act. Our position is that this provision, K.A. 3, discusses the allocation of fees and costs that come at the end of the case based on who won and who lost. And if you read it as a whole, as I think Justice Kagan suggested, that's what Congress was doing. It was carefully calibrating the allocation of fees and costs at the end of the case. And in fact, in instances in which defendants have asked for fees and costs in FDCPA cases based on bad faith, they do always come at the end of the case, which also shows this is not a misconduct provision. If it were a misconduct provision, it wouldn't just be about bad faith in bringing the action. The Fair Credit Reporting Act, for example, has a provision that provides for fees, but not costs, that speaks to conduct throughout the case with respect to bad faith filings of pleadings, motions or other papers. That's a misconduct provision. This one isn't. It may be. Scalia, Isn't it the case that in order to appeal to the proposition that the specific governs the general, you have to read the second sentence of 3 as containing a negative implication, as saying it? Yeah. We do read the court may award to mean, and in other circumstances it may not. It may not. So you are reading in a negative. Justice, this court read may in Cooper Industries or Crawford Fittings and said if you don't read may to define the scope of what Congress is authorizing the court to do, then that provision has no meaning. And I understood Ms. Black to actually agree with that, that if you put Rule 54 aside, this does say you may under a certain set of conditions, which implies you may not under if those conditions are not met. Right. But she did agree that without Rule 54, this provision, that no cost could be awarded to a defendant unless they had acted in bad faith. I mean, I think at some points GRC and Ms. Blatt here today asked you to just ignore that and costs exist in the sentence at all, although the fact that this sentence is not replicated numerous times throughout the U.S. Code doesn't seem to me reason for ignoring it, but rather for giving effect to it. Congress obviously thought it was doing something when it enacted this sentence and when it added these words to the statute. It does not say the court may award fees in addition to costs or as part of costs or together with costs. Again, grammatically, it treats the two terms, fees and costs, on a platter. Scalia, suppose the word and costs were left out in the second sentence. Would not the argument be made that you cannot award costs even in an action brought in bad faith? Wouldn't the same argument you're making? No. There are statutes that provide for fee awards and don't say anything about costs. But you're saying negative implication. If it says only attorneys' fees in reasonable relation to the work expended, the implication would be you cannot even in the case of a frivolous action award costs. Wouldn't that be the reading of it? In other cases, under other statutes, that argument has been made occasionally and rejected. It's also rejected in the treatises that we cite that don't mention costs. But I'm suggesting if that argument is rejected, so should yours be, because it seems to me the two are parallel. If a statute does not mention costs, then it doesn't provide otherwise with respect to costs. Breyer, so she says if I, if I tease, if you tease your sister, I'm going to give you, going to give you, give her your allowance and her allowance. That doesn't mean that the sister loses her allowance if you don't tease her. I mean, there are a lot of instances where you put the and in and it doesn't mean that that's the exclusive place for giving it. Sometimes it does, sometimes it doesn't. That's her point. Well, putting aside that I hope that Congress drafts a little more carefully than a mother. I doubt that it does. I'm sorry. And it's too high. I mean, they're human beings over there. They're not necessarily all. But the presumption behind that hypothetical is that the one child is going to get their allowance no matter what. The presumption here is that Rule 54d will apply unless a statute provides otherwise. This statute does. Thank you, Your Honor. Thank you, counsel. The case is submitted.